GOODWIN *v.* RANDOLPH.

SAME *v.* SAME.

*(Circuit Court, D. New Jersey.* September 27, 1884.

PATENTS FOR INVENTION—INFRINGEMENT—HARVESTERS—ROCK-SHAFTS.
 The fourteenth claim of the patent granted to William Farr Goodwin for an improvement in harvesters, bearing date April 18, 1876, construed, and *held,* that the pivoted rock-shaft therein claimed is not infringed by the rock-shaft and lever in the machine sold by defendant.

On Bill, Answer, and Proofs. Final hearing.
*W. F. Goodwin,* plaintiff *pro se.*

BRADLEY, Justice. The bills of complaint in these cases are founded on certain letters patent issued to the complainant, bearing date the eighteenth day of April, 1876, for new and useful improvements in harvesters, which, it is alleged, the defendants have infringed; and the prayers of the bills are for an account of profits, and a perpetual injunction against further infringement. The specification of the patent sets forth and describes several devices connected with harvesters, which are alleged to be new, and which are the subject of 17 different claims. The device in question in the present case, alleged to be

infringed by the defendants, is that which is the subject of the fourteenth claim, which reads as follows: "In combination with the cutter-frame, the pivotal rock-shaft, $s$, $s^4$, and a tilting lever attached to and actuating the rock-shaft, substantially as set forth." The infringement of the invention thus claimed is the sole subject of controversy. The "pivotal rock-shaft," referred to in the fourteenth claim, is not clearly described in the specification, and is only partially exhibited in the drawings attached thereto; but its position and operation are so far pointed out that we may infer its form; and, to demonstrate it more fully, the complainant has put in evidence a model, which he alleges to be a true exhibit of the invention.

The principal object of the apparatus in question is to give the cutting device of the harvester a rocking motion, so that the points of the guards or fingers and of the cutters may be raised and lowered as the unevenness of the ground, or protuberances upon it, may require, without raising or lowering the bars themselves. It is evident that if the cutting apparatus (including the finger bar and cutting bar) were attached to a frame or head-piece, so pivoted, or so loosely attached, to the main frame of the machine as to allow of a rocking motion, such motion could easily be communicated by a simple hand-lever attached to such frame or head-piece, and extending upward and backward, so as to be within reach of the driver; and this method was resorted to in several machines constructed prior to the complainant's invention, differing from each other principally in the mode of attaching the lever to the head-piece, or "cutter-frame," as it is called in the patent. Sometimes the lever would be attached to a yoke, sometimes it would be bent in various ways, so as to pass around other parts of the machinery, and not to interfere with their working, nor be prevented from having its own proper movement. The device of the complainant consists in attaching the lever, not to the cutter-frame itself, but to one end of an intermediate rock-shaft situated below and out of the way of the other machinery, and imparting the rocking motion desired to this rock-shaft, the other end of which is connected with the cutter-frame by a peculiar pivoted arrangement, and the motion given to the rock-shaft is thus communicated to the cutter-frame, and, consequently, to the cutting apparatus. The pivotal arrangement referred to consists of the end of the rock-shaft turned to a right angle with the axis of the shaft, enlarged near its end into a globular shape, and terminating in a pivot, on which the cutter-frame is mounted; the globular enlargement resting in a standard provided with a slot for its reception. It is secured in place by a pivot passing through the globular enlargement, and allowing it to vibrate up and down when operated by the rocking motion of the rock-shaft.

This is the pivoted rock-shaft mentioned in the fourteenth claim. The lever attached to it, and by which the driver operates it, has three distinct parts. That held by the hand of the driver is above the

main frame of the machine; the second portion passes downward through the frame, at right angles with the first, and has notches on its side, making a ratchet to hold it in any position; the third part extends from the lower end of the second, under the main frame, to the rock-shaft. The three sections are rigidly fixed to each other, forming one rigid lever. This is the "tilting lever" referred to in the fourteenth claim. The whole thing, though not specifically described, is referred to in the specification as follows. After describing the cutter apparatus, with its lugs or ears containing pivot holes, or "circular bearings," the specification proceeds thus:

"The rear lug, $s^1$, is mounted upon one end of a pivoted rock-shaft, $s^1$, $s^4$. T, $T^1$, $T^2$, is a finger-bar lever, attached to the inner end of the pivoted rock-shaft, $s^1$, $s^4$. The parts, $T$ $T^2$, of the lever are in substantially parallel planes, and are connected by an intermediate section, $T^1$, arranged at about a right angle to the parts, T, $T^2$, and provided with ratchet teeth, $t$. That part of the rock-shaft which is shown in section in figure 2 is expanded centrally into a globular bearing, and is seated in a recess in an arm, $b^5$, of the main frame, and is pivoted to this arm for a further support; the inner end, $s^4$, being supported in a bearing upon the under side of the frame, but not shown. The object of making this inner end curved is to bring that point which rests in the last-mentioned bearing into a line coincident with the pivot, $s^5$, so that when the rock-shaft is actuated by the lever, T, $T^1$, $T^2$, to rock or tilt the cutter-frame, as indicated by the dotted lines, $y$, figure 2, there shall be no cramping of the parts."

Thus we see that the thing claimed is the pivoted rock-shaft, with the tilting-lever attached to it at one end, and the lug of the cutter-frame mounted on it at the other end, having the end next to the cutter-frame enlarged into a globular bearing, resting in a slot or recess in a standard or arm of the main frame. Now, do the defendants infringe the patent for this invention? We have before us one of the machines sold by the defendants, and also a model of it made for more convenient inspection. Looking at its arrangement for producing a rocking motion in the cutting apparatus, we find, it is true, a rock-shaft, and a lever attached to one end of it; but we do not find the other end of the rock-shaft expanded into a globular bearing; nor do we find the cutter-frame mounted upon it; on the contrary, we find the other end of the rock-shaft provided with an arm projecting therefrom at right angles, and moving up and down, as a rocking motion is imparted to the rock-shaft. To the end of the arm is attached a link which connects it with a pin, forming the bearing on which the cutter-frame is mounted. This pin is held in a standard, or upright arm of the main frame, in a slot or hole vertically larger than the pin, so as to allow the pin to vibrate up and down, and communicate the rocking motion to the cutter-frame.

Notwithstanding the want of conformity between this device and that of the complainant, I should probably think that the one was substantially the equivalent of the other, if the complainant had been the first to apply the rock-shaft as an auxiliary instrumentality in producing the desired rocking motion of the cutting apparatus. But

he was not. Without referring to any other previous invention, that of William N. Whitely, described in letters patent granted to him and dated November 24, 1868, contains a rock-shaft used for the very purpose for which the complainant's is used. The only merit of the complainant's invention is the peculiar form of his rock-shaft and the peculiar mode of applying it. He is not a pioneer in this department of machinery. He did not invent the rocking motion as a process, nor the first means of producing it, nor the mode of producing it by the intervention of a rock-shaft. He does not stand at the head of the line; he is only an individual in the line. He is entitled to what he has invented and nothing more; and what he has invented is nothing but the specific device which he has patented. His claim is to be construed according to its terms, and is limited by them, and cannot be enlarged by construction. I am of opinion, therefore, that the defendants do not infringe the complainant's patent, construed, as it must be, in accordance with the decisions of the supreme court on this subject.

The complainant supposes that his patent has a broader application than that which is now given to it, because he can apply a lever directly to the enlarged globular bearing, and he exhibits such a lever as an alternative in his model. But by this arrangement he dispenses with his auxiliary rock-shaft, which is the very subject of the fourteenth claim, and of the description which was copied from the specification. It may be that the other portions of his patent are independent of the rock-shaft, and that they may stand good with the use of a lever applied directly to the globular bearing; but the fourteenth claim is based entirely on the rock-shaft, and cannot have any force or meaning except as applied to it. It is unnecessary to examine the various patents that have been put in evidence. They exhibit the state of the art in detail, as already referred to in general terms. I am clear, from this exhibit, that the complainant is confined to the specific device which he has described and claimed, and that the machines sold by the defendants do not contain it.

The bills must be dismissed.